Kilty, Chancellor.
This case was submitted on notes filed by the counsel on each side, which, with the bill, answer, and proceedings, have been considered.
The Chancellor is of opinion, that the complainants are entitled to relief; and, that the release set up by the defendant ought to be set aside, on account of the time and manner in which it was obtained; and also, on account of its not being a mere receipt for her part of the estate, but an acknowledgment of an equivalent, as she then considered it, for what she was entitled to, which, if leading to her injury, ought not to be countenanced by a Court of Equity, (a)
With respect to the manner of taking the account, it is not meant to decide thereon at present; but the Chancellor is of opinion, that so far as the specific property came to the hands of the defendant as guardian, having before held it by his intermarriage with the administratrix, he is not entitled to settle by the amount of the inventory in money. But,, on the other hand, the Chancellor is not satisfied, that the appraised value of the negroes, &c. (as far as it is to be considered in the account,) is to be controverted by the opinions of witnesses as examined in the commission.
*8 Decreed, that the release signed and sealed by the complainant Harriet, filed with the proceedings, exhibit No. 6, be set aside, annulled, and declared void as such, leaving the money and articles therein referred to, to be restored or accounted for as shall hereafter be ordered. And that the defendant account with the complainants for their proportion of the personal estate, and for the rents and profits of the real estate in the proceedings mentioned. That the said accounts be stated by the auditor according to the proof already taken, and in addition thereto, on such proof as may be produced by either party; and to be returned, subject to the further order and decree of this court.
The plaintiffs, by their petition, stated that they had frequently applied to the auditor to state an account, as directed by this decree, which he had not done, by which means the defendant was left in the full enjoyment of all their property, to their great delay and injury. Wherefore, they prayed, that the auditor might be ordered to proceed without delay, &c.
5th June, 1812.
Kilty, Chancellor.
The auditor is directed to proceed immediately on the statement of the accounts under the decree; unless prevented by any particular circumstances, which circumstances, if any, he will state to the court.
After which, the auditor stated, and on the 2d of July, 1812, reported an account, as required by the decree; which was suffered to remain some time without objection, when the case was again brought before the court by the plaintiffs.
15th July, 1812.
Kilty, Chancellor.
The report having been docketed, and laid during the first seven days of the present term, the complainants are entitled, under the rule of the court, to have the accounts ratified, or examined and decided on.
Decreed, on the application of the complainants, that the account reported by the auditor, and filed, as above mentioned, on the 2d day of July, 1812, be ratified and confirmed ; and, that the defendant Lyde' Griffiith, do forthwith pay to the complainants, or bring into this court to be paid to them, the sum of £363 2s. Id. current money, with interest thereon from the 2d day of July, 1812, till paid or brought in; and the costs of this suit amounting as taxed by the register to ■-.
*9 After which it was, by a writing filed, agreed between the parties, that this decree be annulled and set aside; that the accounts and papers be returned to the auditor; and that further accounts be stated according to the directions which should be given to him by either party.
On the 19th of December, 1813, the auditor filed a report in which he says; that instructions having been filed, on the part of the complainants; and the service of notice, when he should proceed to state the account having been admitted by the defendant; he did proceed accordingly, and having carefully and minutely examined the proceedings, the testimony and the instructions, he has first stated account No. 1, in which the defendant is charged with the rents and profits of the real estate, without interest, up to the 9th of January, 1811, and credited by his wife’s one-third thereof to the 9th of January, 1808, the day of her death. This account shews the sum of $201 26, to have been John H. Dorsey's share of the said rents and profits to the day of his death; and the sum of $1322 63, to have been the complainant’s wife’s share of the same rents and profits, to the day on, or about which the possession of the real estate is said to have been delivered to the complainants.
The auditor has then stated account No. 2, in which the defendant is first charged with the whole balance of the personal estate remaining, after payment of debts, with interest thereon from the 25th of April, 1798, to the 19th of December, 1813, and credited by the amount of the appraised valuation of the slaves; by his wife’s one-third of the balance, to the day of John II. Dorsey's death, and her one-half thereof from that time to the 19th of December, aforesaid. This part of the account shews the sum of $194 32, to be John H. Dorsey's proportion of the net personal estate, other than slaves; and of the interest of the whole net personal estate to the day of his death; it also shews the sum of $738 16, to he the complainant’s wife’s share thereof to the said 19th of December, 1813. In the second part of this account the defendant is charged with John H. Dorsey's said proportion of the profits of the real estate; and with his said proportion also of the net personal estate, other than the slaves, and of the interest of the whole net personal estate, to the day of his death; and he is credited by the usual allowance for the said John H. Dorsey's hoard, clothing and tuition, viz: the yearly profits and interest of his real and personal estate respectively; and, also by his wife’s one-half *10 of the balance. This part of the account shews the sum of $68 25, to be the complainant’s wife’s share of her deceased brother’s net personal estate, other than slaves as aforesaid.
The auditor has then stated account No. 3, in which the defendant is charged with the complainant’s wife’s share of her deceased brother’s net personal estate, other than slaves; with her said proportion of the rents and profits of the real estate; with her said proportion of the net personal estate, other than slaves, and of the interest of the whole net personal estate to the 19th of December, aforesaid; and lastly, with interest on the two last year’s rent of the real estate, from the day and year respectively, on which they became due to the 19th of December, 1813. He is then credited by the usual allowance as aforesaid, for the board, clothing and tuition of the complainant’s wife, and by the negro girl, cash, and sundry articles stated to have been paid to her, by the defendant, as the consideration of the release vacated by the decree. The defendant, however, is not credited by the land, said to have been at the same time, and for the same purpose given to the complainant’s wife at $100; because it does not appear from the proceedings, that the said land, or any other was ever conveyed to her. This account then shows a balance due on the 19th of December, 1813, to the complainants of $41 88.
The auditor has then stated account No. 4, first stating from the testimony, taken in virtue of the commsssion, an estimate, marked A, of the value, at the time of executing the said commission, of the personal estate which consisted of slaves, together with their increase, in which the defendant is charged with all the slaves, and credited by one-half of them in value in kind in right of his deceased wife. This last account gives seven negro slaves therein named, most of them children, to the complainants, and four of full age to .the defendant.
The auditor begs leave to remark, that if the improvements for which the defendant claims an allowance have given any additional value to the real estate, which from the testimony is extremely doubtful, he is of opinion, that their cost as well as every other incidental expense, not allowed him in the accounts aforesaid, have been fully reimbursed by his holding the net personal estate, other than the slaves, at their appraised valuation, which is clearly proved to have been a very inadequate one. He has to remark, also, with reference to the interlocutory decree, that if the accounts had been stated conformably to the principles there suggested, the' *11 result would have been precisely the same. He therefore begs leave to report, that the complainants are now entitled to the following negro slaves, to wit: Ben, Joseph, Roderick, Lucy, Westly, Mary, and Henry, and also to the sum of $41 88, with interest thereon from the 19th day of the current month until paid; and their costs incurred in the prosecution of this suit.
To this report the defendant excepted; first, because the auditor had paid no regard to the valuation of the real estate, as made under the authority of the Orphans Court, and sanctioned by that court, and which valuation could not be set aside by the testimony in this case; second, because a sufficient allowance had not been made for the board, clothing, and education of the complainant Harriet and her brother; third, because the defendant was charged with the rents and profits of the real estate before he took charge thereof, or had any thing to do therewith; fourth, because no allowance was made to the defendant for the repairs and improvements made by him on the farm of the complainant Harriet, and which being necessary ought to be allowed; fifth, because sundry credits, to which from the testimony, it appeared that the defendant was entitled, had not been allowed to him; sixth, because the negro girl, received by the complainant Harriet of the defendant, was credited at too low a sum; and, if the settlement was to be set aside, the complainant could have no right to said girl; seventh, because the rents and profits of the complainant Harriet, were fixed at an extravagant price; and were charged to the defendant when they were not received by him.
18th January, 1814.
Kilty, Chancellor.
0The exceptions to the auditor’s report being submitted on notes in writing, the proceedings in the suit have been considered; but the Chancellor has not fully made up his opinion on them.
On the first exception he is not satisfied, that the valuation recognized by the Orphans Court ought to be disregarded, and the value estimated from the evidence; but if this valuation should be taken as the rule, it may not apply to every year. On the third exception, the Chancellor is under the impression, that the defendant is answerable as far as a claim against his wife, who might have been obliged to account; provided any sum should appear to have been due before his guardianship commenced. It cannot be admitted, that settlements made by the Orphans Courts are in all cases conclusive ; but they may frequently render it necessary to bring further proof of credits allowed by them. But when the balance *12 stated against a guardian on a final account is relied on by him, he ought to exhibit all the accounts, so as to shew the original charges on which it was founded.
The Chancellor is satisfied as he was on passing the decree to account, that the complainants were entitled to a distribution of the specific articles when they could be traced in the hands of the administrator or guardian. But he cannot confirm the account No. 4, reported by the auditor, in which he makes the allotment to the parties of different negroes by name. There are two modes by which this may be done in the Orphans Court. One under the act of 1798, ch. 101, sub ch. 11, sec. 16, by making the distribution on a day appointed : and the other under the act of 1810, ch. 34, sec. 5, by the appraisement of commissioners, on which, if necessary, a sale may be ordered. The last act is not obligatory on the Orphans Court; but they may resort to the former, which in this case is considered preferable. And if this court has any jurisdiction or power in the case, it may adopt the modes prescribed for the Orphans Courts, or a course analogous to them.
It is therefore Ordered, that this court will on Thursday, the 3d day of February next, make a distribution of the negroes mentioned in the proceedings, and in the auditor’s account No. 4; provided a copy of this order be served on the defendant Lyde Griffith, before the 26th day of the present month. The Chancellor will also, on that day, determine as to the other parts of the report, and decree accordingly. It is however to be observed, that the counsel for the defendant, relying possibly on the defence set up, has not given to the auditor instructions to state an account in any other manner, or shewn how the balance would stand, after excepting the negroes as specific articles, if his exceptions should prevail.
After which, the parties having had time to consider and prepare for the further argument of the case, on the suggestions of the Chancellor, they put in some further notes in writing of the arguments on which they respectively relied, and the case was again brought before the court.
12th February, 1814.
Kilty, Chancellor.
The Chancellor has again examined the proceedings in this case, and considered the additional notes put in for the defendant and since for the complainant.
*13 The most material point in controversy is, that respecting the settlement in money, or in specific articles, as to which the Chancellor has already expressed his opinion, which is not altered. The objection to the credit of $150, on account of the negro girl, appears to be reasonable, inasmuch as the complainants, on setting aside the settlement or receipt No. 6, ought not to retain any benefit arising from it. The negro girl ought, therefore, to be returned, as also the land, which, not being conveyed, the auditor did not bring into the account. This will render necessary an alteration in the account No. 3, which is made in an account stated by the Chancellor marked No. 5, leaving the balance in money $235 83, instead of $41 88. The Chancellor does not perceive any thing in the evidence from which a greater allowance could be made for the maintenance of the complainant Harriet; nor, as the proceedings stand, can he direct any alteration as to the repairs, or the maintenance of the young negroes. And, with respect to the settlement of the guardian’s account by the Orphans Court, he is under the impression, that the balance of £288 12s. Id. supposing it not altered materially by the succeeding years, would give a value in negroes, estimated according to the appraisement, much greater than the one reported by account No. 4.
Decreed, that, on the complainant’s tendering, or offering, on condition of an immediate compliance with this decree, to deliver to the defendant the possession of the nine and three-quarters acres of land, and the negro girl, mentioned in the proceedings, as part of the consideration from the defendant, on account of which the receipt, or release exhibit No. 6, was given, the defendant Lyde Griffith, do forthwith pay to the complainants, or bring into this court, the sum of two hundred and thirty-five dollars eighty-three cents, with interest thereon from the 19th day of December, 1813, till paid or brought in; and do also forthwith pay over and deliver to the said complainants the following negro slaves named and described in account No. 4; being one half of the personal estate in kind, to wit, one negro lad named Ben; one negro lad named Joseph; one negro lad named Roderick; one negro woman named Lucy; and one negro girl named Henny — the Chancellor having made the division or distribution in the manner stated by the auditor; because no cause has been shewn to the contrary, notwithstanding the service of the order of the 18th of January, on the defendant.
*14 It is further Decreed, that the defendant Lyde Griffith, pay to the complainants their costs, amounting, as taxed by the register, to $224.
The defendant appealed, and the Court of Appeals, at June term, 1816, affirmed the decree.
After which the plaintiffs, by their petition, stated that although they had given the defendant notice thereof, he had not complied therewith. Whereupon they prayed process to enforce obedience, (b) upon which it was, on the 26th of June, 1816, ordered that an attachment issue as prayed; and it was issued accordingly.
The defendant, on being taken into custody and brought before the court, put in his answer on oath, in which he admits, that he had been served with a copy of the affirmed decree as set forth; but he states, that it was agreed that they should have a meeting, at another time and place, when the terms of the decree should be complied with on both sides; and the plaintiffs then admitted, that they had in their possession property to which the defendant was entitled, which they promised to deliver up ; and they also admitted that the defendant was entitled to credits which had not been given to him; that the defendant attended for some hours on the day, and at the place appointed, and the plaintiff not appearing, he went home, soon after which the plaintiff came to the defendant’s house, having the negro girl, mentioned in the decree, with him, for the purpose, as he said, of delivering her up; and soon after they went upon the land in the possession of Thomas Henry, a tenant of the plaintiff’s, when the plaintiff pulled down a part of the fence, rode into the field, and desired the defendant to take possession of the land, if he knew where it was, observing, that a part of it was in that field, and another part in woods; that the plaintiff did not pretend to deliver possession of any particular part, or to turn his tenant out of possession, who then persisted in holding possession until the expiration of his lease in November following ; the plaintiff soon after went off, taking with him the negro girl; that the plaintiff has been enjoined by this court not to dispute the possession of his tenant. That the defendant is a' citizen of, and resides in Montgomery county, which has been the place of his residence for several years ; and the attachment was served *15 on him by the sheriff of Anne Arundel county, in the city of Annapolis; and the defendant denies that he intended any contempt, &c.
10¿h July, 1816.
Kilty, Chancellor.
This petition was argued by counsel on each side. Those parts of the answer, respecting further credit, could not have any influence on the question, and were not relied on in the argument. But it appears, that Crapster had not such a possession of the land as to enable him to make a valid tender of it, under the decree; and, supposing, as contended, that Griffith was unwilling to comply with the decree, he ought not to be compelled so to do, without receiving what he is entitled to, which he might otherwise have to seek for after a compliance on his part. The objection as to the manner of offering the possession, would not be material, if Crapster held the land; because Griffith must have known where it lay.
As to the objection on the ground of residence, it appears, that by the practice in England, a person found in London may be attached there, though residing in a different county. I do not know, that a case of the kind has before occurred here; but it is not material in the present case, as, for the reasons above stated, the respondent Lyde Griffith, is discharged from the attachment, leaving the decree to be proceeded on hereafter, so as to have it finally executed.
After which, on the 31st of May, 1817, this plaintiff Basil Crapster, filed another original bill against this defendant Lyde Griffith; in which he refers to and invokes the proceedings of the former suit into this; and then states, that the defendant had retained and received the profits of the negroes allotted to this plaintiff until the last day of November, 1816; that the commission, in the former case, under which proof had been taken ascertaining the sex and age of all the negroes in the possession of the defendant, which were of the estate of the late Vachel Dorsey, was closed on the 8th of September, 1810; since which time, and before the decree of the 12th of February, 1814, Lucy, one of the negroes decreed to the plaintiff, had had two children, the one named Alfred, and the other named Cuffiee; and that Milly, another of the negroes decreed to the plaintiff, had also had a child in the same interval of time, named Eliza; which three negro children the defendant refused to deliver, and claimed as his own. That Harriet, the wife of this plaintiff, had joined him in a *16 deed conveying all her real estate, in the proceedings mentioned, to Dennis D. Howard, who had conveyed the same to this plaintiff ; after which she died. That the defendant had, while he acted as guardian of the late Harriet, and during her minority, obtained from the land office, a warrant to affect some vacancy, under which he had obtained a patent for nine and three-quarters acres of vacancy adjoining her land, which was obtained for her benefit. That the plaintiff had not been able to deliver possession of the land to the defendant, as directed by the decree ; because he could not ascertain its true location; and the defendant had taken no steps to ascertain it; but intended, as the plaintiff believed, to throw down the fences, and expose the plaintiff’s crops to great damage, under pretence of resorting to the land he had so obtained. Whereupon it was prayed, that the defendant might be Ordered to deliver to the plaintiff the negroes, born after the close of the commission, ahd before the decree; to account for the value of the labour of the other negroes, from the 19th of December, 1813, the date of the auditor’s report, to the last day of November, 1816, when they were delivered : to convey to the plaintiff the adjacent vacant land for which he had obtained a patent, upon being refunded the amount of expenses incurred in obtaining the, same; and that he might have .such other relief as was suited to the nature of his case.
The defendant, in his answer to this bill, admits the proceedings in the former suit, and that he had not delivered the negroes before the time mentioned; because the plaintiff had failed to comply with the terms of the decree on his part; that he then held the three negro children, as alleged; because he believed himself to be lawfully entitled to them. That he had not taken up any vacant land adjacent to the land of his ward, or for her use; but had obtained a patent for'some land, for which he had fully paid. And he further alleged, that as it appeared to be the object of the plaintiff to have the former decree opened, and the case reheard, he prayed to be permitted to introduce ánd substantiate sundry claims and allowances, as then specified, which he had not obtained the benefit of under the former decree.
The plaintiff put in a general replication to this answer; upon Which a commission was issued, and the depositions of several witnesses taken and returned,on the 18th of January, 1819. After which the case was brought before the court.
*17 10th October, 1819.
Kilty, Chancellor.
Decreed, with the assent of the parties, that the auditor state an account between the parties, upon the evidence in the cause, or such other evidence as shall be produced by either party; reserving, nevertheless, all equity, as to the right of the party to claim an account, until the final hearing.
On the 17th of June, 1820, the auditor reported, that on the application of the plaintiff, he had given notice as usual, that he would attend, on a certain day, to take any further testimony; but none having been offered, he had since carefully read and considered the proceedings and the testimony already had; and having first prepared from them the estimates accompanying this report, he had stated an account betweén the parties, wherein the defendant is charged with the value yearly, according to the estimates of the services of the negroes heretofore allotted to the complainant; that is to say: from the 19th of December, 1813, to which time the first account was carried, until the 30th of November, 1816, when they were delivered; and with interest as usual. And he is credited for the board, &c. of the complainant’s wife from the 9th of January, 1809, when the allowance therefor, in the first account, was discontinued until April following, when, it is now proved, she left the defendant’s house — for the services of Negro Maria, according to the estimate from that time until she was returned to him — for the expense, according to an estimate, of raising the negro child Hanson, until the 30th of November, 1816 — for one-half the expense, also, of raising the negro children Alfred, Cuffee, and Eliza, from the 19th of December, 1813, until they respectively attained the age of seven years — for a sum paid the commissioners for dividing certain lands of Capt. Philemon Dorsey, and for interest; leaving due to the complainant a balance of $291 77, with interest thereon from the 19th of December, 1819, until paid.
The auditor further states, that he could not make any allowance for the nine and three-quarters acres of land; because of the absence of testimony, from which its annual value might be estimated. For expenses of raising the young negroes heretofore, as aforesaid allotted to the complainant, he makes no allowance; because the account then taken, up to the 19th of December, 1813, was predicated upon an assumption, that the negroes of Vachel Dorsey were indisputably worth yearly the interest of the sum at which they were appraised, over and above the expense of raising *18 their increase. And if there were any inequality in the duration of them, it is now too late to rectify it, directly or indirectly. It was made from a view of the testimony then had, with notice to the defendant, both before and after it was made; and then confirmed by the court in the absence of any objection" on his part, notwithstanding such notice.
The valuation of the two negroes, Walter and Mary, said to have been returned in the inventory, and to have died some time after-wards, does not appear in this inventory or elsewhere. They are not even named in it; and all the negroes are valued together, and not separately. And the auditor is not satisfied, that if" so returned, and since dead, they have not been already passed.to the credit of the administrators in their final account rendered to the Orphans Court. Of the fees and taxes, and their amount, said to have been paid by the defendant for account of his ward, or of any other payment or expenditure with which his ward’s estate was chargeable, either for the whole, or in part, having been made by the defendant, and not credited him somewhere, there is no sufficient proof.
The auditor further states, that he does not see how he can aid the court in apportioning the negro children Alfred, Ckjfee, and Eliza, born since the time to which the first division related; no evidence having been taken under the commission from which the value of each might be collected, as was done before. All he can do is to report to the court, that from the testimony in the cause, it appears, that Alfred is now about ten years of age, and that Cuffee and Eliza, are between seven and eight years old.
The defendant excepted to this report of the auditor; first, because the charges in the account for thé hire of the negroes allotted to the complainant in the former suit, .are extravagant; second, because no allowance ought to be made for the same, as the complainant did not comply with what was required by the decree on his part; third, because more ought to have been allowed to the defendant for the 'expenses, &c. for which he is allowed a credit; fourth, because he had not allowed the defendant the credits to which his proofs entitled him; fifth, because, as the complainant claims more negroes than were allowed to him in the former decree, it is competent to the defendant, in answer to said claim, to prove, that he has already received more than his proportion of all the negroes; sixth, because, as complainant, agreeably to proof, received negroes to which he is not entitled, it is contrary *19 to all equity that he should now he allowed for the hire of those negroes ; seventh, because credit is not allowed the defendant for the two negroes, Walter and Mary, who had died before the former decree; and eighth, because no allowance had been made to the defendant for the expense of raising the young negroes, born since the death of Vachel Dorsey, which have been allotted to the complainant.
12th January, 1821.
Kilty, Chancellor.
This suit being ready for hearing, was argued by counsel on each side, on exceptions to the auditor’s report, and on the equity reserved by the interlocutory decree made by consent of the parties.
On considering the proceedings, I have formed the following opinions on the case; first, that the decree in the suit by Crapster and wife, against Griffith, as affirmed by the Court of Appeals, is conclusive and cannot be opened for either party; secondly, that the negroes born after the close of the commission, ought to have been brought in by a supplemental bill, and cannot be sued for by a new bill, having been in esse before the decree; and thirdly, that the value of the labour of the negroes, from the time of the auditor’s statement, ought not to be allowed in this suit, it being a subject proper either for the Court of Appeals, in the nature of an increase of damages, or interest; or for a suit on the appeal bond. There is also a prayer in the bill for a conveyance of certain lands taken up, concerning which nothing was said in the argument; and there is no ground for a decree.
Decreed, that the bill be dismissed with costs, to be taxed by the register.
From this decree the plaintiff appealed, and the case having been carried up to the Court of Appeals, and the solicitors of the parties fully heard there.

12th July, 1823.

By the Court of Appeals.
Decreed, that the decree of the Court of Chancery be reversed with costs in that court and in this. Decreed, that the appellant is entitled to one moiety of the negroes, born of Lucy and Milly after the execution of the commission, and before the passing of the decree in the suit brought by the appellant and his wife, against the present appellee in the Court of Chancery, and which is referred to and made part of the bill of complaint in this cause; and that the appellant is entitled to recover the value of the labour of the negroes assigned to him by said decree, from the date of the auditor’s statement, to wit: *20 the 19th day of December, 1813, to the period when the said last mentioned negroes were delivered to the appellant. And Decreed, that the Chancellor make and pass all necessary and proper orders for carrying this decree into full and complete effect.
The plaintiff by his petition, shewing this decree of the Court of Appeals, prayed that the case might be referred to the auditor, with directions to state an account accordingly, from the proceedings in the case, and on such testimony as he might be authorized to take, &c.
4th May, 1824.
Johnson, Chancellor.
On the present application, and in pursuance of the decree of the Court of Appeals of the 12th of July last, it is Ordered, that the auditor, from the evidence in the cause, or from such as may be taken before him, the usual notice being first given, report to this court the names and ages of the negroes born of Lucy and Milly after the execution of the commission, and before the passing of the decree in the suit brought by the appellant and his wife against the defendant in this court; as well as the value of each ; in order that the complainant may obtain one moiety thereof. And it is further Ordered, in pursuance of the said decree of the Court of Appeals, that the auditor also state and return an account from the same evidence, the value of the balance of the negroes assigned to him from the date of the. auditor’s statements, to wit: the 19th of December, 1813, to the period when the said last mentioned negroes were delivered to the appellant.
On the 21st of September, 1825, the auditor reported, that on the application of the plaintiff and in execution of this order, he had given notice to the parties; and had, at the instance of the plaintiff, issued summons for his witnesses which having been served, the parties and witnesses attended, and some additional testimony having been taken by him; from all which he states, that the negroes born of Lucy and Milly, after the execution of the commission, and before the passing of the decree, are Alfred, about fifteen years of age, and of the value of $280; Cuffee, about thirteen years of age, and worth $250; and Eliza, aged thirteen years, and of the value of $175. In considering the second part of this order, and the decree of the Court of Appeals, it was designed to execute, it occurred to him, they might have been intended to require, as they literally do, an account solely and *21 exclusively of the value of the labour of the negroes awarded to the complainant in the first suit, from the time to which the credit in that suit was carried, to the date of their delivery; and he accordingly stated the account A, making due from the defendant to the complainant, $879 60, with interest on $831 32, part thereof from the 19th of December, 1816, until paid.
Then supposing it might be desirable to the court, to have the defendant allowed, in such account, all credits he might appear to be entitled to, and charged further with what might appear to be properly chargeable to him for services of the said negroes Alfred, Cuffee and Eliza; he stated another estimate of the allowance to be made for the raising of young negroes until they attained the age of seven years; from the evidence here reported, considered together with that taken under the commission in this suit; and then the account B, being a continuation of the account reported on the 17th of June, 1820; correcting, according to the estimate so stated, the credits in that account for the maintenance of young negroes, and charging the defendant with half the value of the services of the said Alfred, Quffee and Eliza, from the time they respectively attained the age of nine years, until the 19th of December next, the end of the year; and it makes due from the defendant to the complainant, $669 64, with interest on $520 75, part thereof, from the said 19th of December, 1825, until paid.
To this report the defendant excepted, 1st. Because it was not pursuant to the decree of the Court of Appeals, nor warranted by the testimony. 2d. Because so much of account B, as relates to errors in the former account of the 17th of June, 1820, is not authorized by the testimony nor by the order of the court. 3d. Because the valuation, in the latter part of account B, is not authorized by the decree of the Court of Appeals; and also, because it is made upon the evidence of one who has given contradictory testimony, and is also contradicted by other proofs. 4th. Because interest is charged. 5th. Because account A is not warranted by the testimony; and 6th. To both accounts, because credits to which the defendant is entitled, and "which have never been allowed him, are not given.
The defendant, by his petition on oath, stated, that, in consequence of an agreement with the plaintiff to refer the case to arbitration, he had not caused his witnesses to attend and give evidence before the auditor. Whereupon he prayed, that the case *22 might be remanded to the auditor, with directions to take further testimony, &c.
13¿/¿ October, 1825.
Bland, Chancellor.
Ordered, that this case be, and the same is hereby returned to the auditor, to take such additional testimony as may be produced by either party, on giving the usual notice; and to correct his report and statements accordingly.
On the 20th of September, 1826, the auditor reported, that after having given notice to the parties, he had taken the depositions of several witnesses, from which he had corrected the estimates heretofore returned, and restated the accounts. On account A, the defendant is indebted to the complainant in the sum of $824 43, with interest on $779 22, part thereof from the 19th of December, 1816, until paid. On account B, the defendant is indebted to the complainant in the sum of $603 93, with interest on $475 71, part thereof from the 19th of December, 1825.
The plaintiff excepted to this report, and account B of the auditors, 1st. Because an allowance was made to the defendant for the maintenance of the negroes Alfred,, Caffee and Eliza ; and he is charged with the value of their services. 2d. Because it refers to and is predicated upon an account reported 17th of June, 1820, wherein are included sundry charges and discharges not warranted by the decree of the Court of Appeals ; and 3d. Because, by that decree the only matter of account between the parties is the value of certain negroes’ services mentioned in account A.
The defendant excepted to the report of the auditor, 1st. Because too much was allowed for the services of the negroes. 2d. Because too little is allowed for the maintenance of the infant negroes. 3d. Because the complainant is not charged with the moneys omitted in the former account, and which he had admitted, as would appear by the testimony. 4th. Because interest is charged, which, under any circumstances, ought not to be allowed, and more especially when the complainant has not executed the decree requiring him to reconvey the land; and 5th. Because, until a division is made of the negroes born after the return of the commission, and before the final decree, the defendant is not chargeable with the services of any of them.
30th January, 1829.
Bland, Chancellor.
The exceptions to the auditor’s report standing ready for hearing, the solicitors of the parties were fully heard, and the proceedings read and considered.
*23 The decree of the Chancellor having been reversed, and the case remanded to this court, with orders to execute the decree of the Court of Appeals; the auditor was directed to state an account accordingly, with a view to enable this court to perform the duty prescribed to it; which accounts the auditor finally stated and reported on the 20th of September, 1826. The substance of the exceptions taken to the accounts thus reported is, that neither the one nor the other of them conforms to the directions of the Court of Appeals.
The solicitors have allowed themselves to take a retrospective and large view of this case; and have thence argued, that the decree of the Court of Appeals cannot be taken in its literal sense; because it would, if so taken, produce the grossest injury to one; do complete justice to neither of the parties ; and in no way cover the whole case upon which the court was called upon to adjudicate. For, by giving to the plaintiff nothing more than a bare moiety of the three negroes born of Lucy and Milly, he would lose his share of their hires and profits until they are divided, or sold, and delivered up. And by giving to the plaintiff the entire value of the labour of the other negroes, as specified, the defendant would be excluded from credits and deductions to which, from the nature of the whole case, he is most manifestly entitled. But this court cannot permit itself to indulge in any such wide range of review, or great latitude of construction.
When a decision is adduced as a precedent, affording evidence and illustration of the principles of equity, which it is urged should govern a new case, then under consideration, unless the rule be unambiguous and clear, it is certainly fit and proper to attend to all the circumstances upon which it is founded; and also to understand the reasons and arguments by which the mind of the court was brought to the conclusion which has been recorded as its judgment. Because in such instances the only object is to ascertain what is the law applicable to the case under consideration, which law does not consist in particular cases; but in general principles which run through and govern them. The principle is the thing which is to be extracted from cases, and to be applied to other cases, (c)
*24 Here, however, this court has been entirely precluded from any such inquiry. The law of this case has been pronounced by the tribunal in the last resort; and it has been returned to this court with special directions as to the mode in which that law is to be carried into effect. Interest reipublicce res judicatas non rescindí. It is, therefore, now wholly unimportant, as regards the matter under consideration, what was the nature of the case on which the decree of the Court of Appeals was founded; or what were the reasons which induced that court to give the directions it has done ; since it is not the reason, of applicability of the law, so laid down, which is in any manner the subject of consideration at this time ; but simply in what mode the directions given for executing an unalterable judgment can be most correctly and effectually complied with.' Litigation must end somewhere. It is certain, that this court cannot, in any one particular, however unimportant, revise, correct, or alter, any order or decree of the Court ot Appeals ; and it is questionable, whether even that court itself, confined as it is, by the express provisions of the constitution, to the exercise of none other than a specified degree of appellate power over the decisions of the tribunals of original jurisdiction, can, after the close of the term at which its decree has been passed, grant a rehearing or bill of review for any cause whatever, (d)
This case has been carried to the ultimate tribunal, and a final decree obtained ; which having been sent here to be executed in the mode prescribed, it consequently becomes my duty promptly to obey. I therefore deem it proper to pass by, without further notice, all those portions of the argument, respecting the incomplete nature and unjust operation of the decree of the Court of Appeals, which have been so strongly urged, and to proceed to the execution of it, according to its clear and unequivocal meaning.
It has been finally and very distinctly declared, that the plaintiff is entitled to recover the value of the labour of certain negroes. That value I conceive has been correctly ascertained by the auditor’s account A. I shall, therefore, award it to the plaintiff accordingly. It has been further very perspicuously decreed by the Court ot Appeals, that the plaintiff is entitled to one moiety of the negroes *25 born of Lucy and Milly, who are admitted to be the three negroes Alfred, Cuffee and Eliza.
A partition of personal estate can only be obtained in a Court of Equity; and if the partition cannot be made in kind, this court has the power to order a sale for the purpose of converting the individual property into money, so as to make a correct division of the proceeds of the sale. These three negroes are incapable of a partition into moieties ; and consequently, the decree of the Court of Appeals can only be carried into effect by a sale, which I shall order accordingly, (e)
Decreed, that the account A, as made and reported by the auditor, on the 20th of September, 1826, be and the same is hereby ratified and confirmed; and the account B, together with all the said exceptions in any manner impeaching the said account A, are hereby rejected and overruled. ( Decreed, that the defendant pay, or bring into this court to be paid to the complainant, the sum of $824 43, with legal interest on $>779 22, part thereof, from the 19th of December, 1816, until paid or brought in, together with the costs of this court, and the costs in the Court of Appeals, to be taxed by the register. Decreed, that the three negroes Alfred, Cuffee and Eliza, in the proceedings mentioned, be sold, &c. That Thomas S. Alexander be appointed trustee to make the said sale, &c. That the terms of sale be ready money, &c.
From this decree the defendant appealed, and the case having been carried up, and the solicitors of the parties having been fully heard.

June term, 1831.

By the Court of Appeals.
Decreed, that the decree of the Court of Chancery, passed in this suit, on the thirtieth day of January, in the year eighteen hundred and twenty-nine, be, and the same is hereby reversed with costs. That account B, reported by the auditor to the Court of Chancery, on the 20th September, 1826, be, and the same is hereby confirmed, and all other accounts and statements inconsistent therewith, are hereby overruled. And that Griffith, the plaintiff in error, pay to Crapster, the defendant in error, the sum of six hundred and three dollars ninety-three cents, with interest on four hundred and seventy-five dollars and seventy-one cents from the 19th December, 1825, until paid.
*26 And forasmuch as a sale of the three negroes Alfred, Coffee, and Eliza, in the proceedings mentioned, is necessary, it is Decbeed, that a sale of said negroes be made, as directed by the decree of the Chancellor, and upon such terms as are prescribed in said decree, or may be prescribed by the Chancellor, in any future order. That the Chancellor from time to time, pass any order in the premises which may be necessary, in order to a sale of said negroes, and distribution between the parties, of the proceeds of sale, after deducting all necessary expenses incurred in making the sale. And that in the account hereafter to be stated, relative to the proceeds of sale of said negroes and distribution thereof, the Chancellor shall allow to the defendant in error, his proportion of the just value of the services of the said three negroes, from the 19th December, 1825, until the plaintiff in error shall deliver up said negroes.

 1715, ch. 39, s. 15.

6) 1785, ch. 72, s. 25, repealed by 1818, eh. 193, s. 4.

 Rust v. Cooper, Cowp. 633. Walpole v. Cholmondely, 7 T. R. 148. Browning v. Wright, 2 Boz. and Pul. 24. Silk v. Prime, 1 Bro. c. c. 138, n. Perry v. Whitehead, 6 Ves. 54. Morgan v. Morgan, 5 Mad. 410.

 1804, ch. 55, s. 5. Barbon v. Searle, 1 Vern. 416. Penn v. Baltimore, 1 Ves. 455. Perry v. Whitehead, 6 Ves. 547. Willan v. Willan, 16 Ves. 89. Murray v. Coster, 20 John. Rep. 603. White v. Atkinson, 3 Call. 376. Campbell v. Price, 3 Mun. 227. Burn v. Posug, 3 Desan. 614. McCormick v. Sullivant, 10 Wheat. 199. Vattel, b. 1, ch. 13, s. 165.

 Co. Litt, 197. Smith v. Smith, 4 Rand. 95.